LINDSAY, Judge.
The defendant, Sehumpert Medical Center, appeals from a ruling by a worker’s compensation hearing officer granting worker’s compensation benefits to the plaintiff, Ruby E. Theus. For the following reasons, we reverse.

FACTS

In early July, 1990, the plaintiff began working as a teacher’s aide at the Sehumpert Child Development Center. She worked part-time, approximately twenty hours per week, and earned $112 per week. On October 30,1990, while at work, she stepped on a Lego block and injured her ankle.[1] She worked the remainder of the day; she reported the accident to her supervisor the next day. When the plaintiff reported her present injury to her supervisor, she was referred to the emergency room at Schum-pert Medical Center. She was later treated by Dr. A.E. Dean, an orthopedic surgeon. Dr. Dean diagnosed plaintiffs injury as a sprained ankle and determined that the plaintiff would be able to return to work in a few weeks.
The plaintiff was subsequently referred to Dr. James Lillich, an orthopedic surgeon, who also determined that the plaintiff suffered only a sprained ankle in this accident and would be able to return to work after her ankle healed. Dr. Lillich released the plaintiff to return to work on April 2, 1991.
On April 4, 1991, the plaintiff was evaluated by Karen Armstrong, a vocational rehabilitation specialist, who found that the plaintiff was able to | return to her duties at the day care center. Further, Ms. Armstrong found that there were numerous other light duty jobs that the plaintiff was capable of performing.
Benefits were paid from October 31, 1990 through April 2, 1991, when the plaintiff was released to return to work by Dr. Lillich. The plaintiff failed to return to her position at the Sehumpert Child Development Center and her workers’ compensation benefits were terminated.
The plaintiff then filed suit to obtain a continuation of benefits, arguing that she was still disabled as a result of the ankle injury and could not return to her job at the Sehumpert Child Development Center. The plaintiff contended that her ankle was injured on October 30, 1990, and that in the months following the injury, she began to experience pain and discomfort in her neck, back, hands and generally, all over her body. She argued that the ankle injury triggered a systemic joint disease throughout her body, causing her to be disabled.
On September 18,1992, a hearing was held before a Worker’s Compensation hearing officer. The parties stipulated that the plaintiff injured her ankle on the job on October 30, 1990 and that she received benefits from October 31, 1990 until April 2, 1991, when she was released to return to work.
In support of her claim, the plaintiff presented several reports by Dr. Christopher Burda, a rheumatologist, whom she claims was treating her for fibromyalgia. The plaintiff claimed the fibromyalgia was triggered by the sprained ankle and caused the pain she was experiencing in her entire body. Dr. Burda was not deposed and did not testify at the hearing.
1-iThe defendant objected to the introduction of the reports by Dr. Burda on the grounds that they were not a “verified or declared report” as required by Department of Employment and Training, Office of Workers’ Compensation Administration, Hearing Officer Rule 13.[2] In response to the objection, the hearing officer stated that the record would be kept open and ordered the defendant to take the deposition of Dr. Bur-da. After the hearing, the defendant filed a *633 motion to vacate the order requiring it to take the deposition of the plaintiffs expert, Dr. Burda, on grounds that the hearing officer lacked the authority to enter such an order.
On November 10, 1992, the hearing officer granted the motion to vacate the order concerning the deposition of Dr. Burda. In vacating the order to depose, the hearing officer directed the plaintiff to obtain a properly certified copy of Dr. Burda’s report of June 2, 1992 and mail a copy to the defendant’s attorney and to the Court. The plaintiff was given two weeks to comply.
Post-trial, the plaintiff hired a new attorney. Several of Dr. Burda’s reports were obtained, including the June 2, 1992 report. A signed statement was obtained from Dr. Burda which stated that the reports reflect true and correct copies of his medical records. However, this statement indicates that not “all” of plaintiffs medical records held by Dr. Burda were included. The reports were sent to the hearing officer who based his ruling thereon, as noted hereafter.
Also introduced into evidence at the trial were the depositions of Dr. |4A.E. Dean and Dr. James Lillieh, as well as that of Karen Armstrong, the vocational rehabilitation specialist who evaluated the plaintiff.
Dr. Dean stated that he first saw the plaintiff on November 7,1990. He diagnosed a sprain of the right ankle and treated the plaintiff accordingly. On November 12,1990, the plaintiff complained of pain in her ankle and throughout her calf. On November 19, 1990, the plaintiff was again seen by Dr. Dean. She continued to complain of pain, although at the time, Dr. Dean noted that she had only a mild ankle sprain with a little swelling. His notes indicate that she denied having any back pain. Dr. Dean stated that the plaintiff might have had synovitis, an irritation of the joint lining, but he thought her condition was improved sufficiently that she could return to her employment.
The plaintiff was then seen by Dr. James Lillieh. In his deposition, Dr. Lillieh stated that he first saw the plaintiff on December 12, 1990, to give a second opinion on her condition. At that time, Dr. Lillieh did not find any grinding in the ankle joint or any ligament damage. Dr. Lillieh saw the plaintiff again on December 19, 1990. At that time, Dr. Lillieh considered plaintiffs problems with joint pain in other parts of her body. Dr. Lillieh stated that the plaintiff may have a systemic condition, such as arthritis, but this condition was not triggered by the sprained ankle. Dr. Lillieh referred the plaintiff to Dr. Thomas Pressly, a rheu-matologist, to determine if there was a systemic problem. Dr. Pressly did not testify, nor were any of his reports produced.
On March 13, 1991, Dr. Lillieh again saw the plaintiff. At this time he determined that mechanically, her ankle was normal. He also stated that |Bas of that date, he felt that the plaintiff would benefit from a return to work. Dr. Lillieh found that the plaintiff had a 5% disability of the ankle, but this would in no way prevent her from returning to her job as a teacher’s aide at the Child Development Center.
Karen Armstrong, the vocational rehabilitation specialist with North American Health and Rehabilitation Services, evaluated the plaintiff and found she could return to her position at Sehumpert. Ms. Armstrong also found that there were numerous other light duty jobs that the plaintiff was able to perform that would offer similar hours and wages.
The hearing officer signed and filed a written opinion on March 11, 1993. Based upon Dr. Burda’s reports,. the hearing officer found that the plaintiff still suffers from a disability. He found that, according to Dr. Burda, the ankle injury “made symptomatic claimant’s condition of fibromyalgia and myo-fascial pain syndrome that now appears in several areas of her body.” The hearing officer also found the plaintiff to be credible in her claims of pain throughout her body which appeared after the occurrence of the present ankle injury. The hearing officer stated that under worker’s compensation law, “compensability can be found in the situation where the symptoms first appeared after the accident and the accident could legitimately be the cause of the symptoms.”
He further found that the plaintiff is entitled to supplemental earnings benefits from April 3, 1991, until her ability to return to *634 work can be determined. The hearing officer also ordered a functional capacity test for the plaintiff and ordered the defendant to provide for rehabilitation services.
Finally, the hearing officer found that the defendant was to pay all the | ^plaintiffs medical expenses resulting from her work related injury. The hearing officer denied the plaintiffs claim for legal fees under LSA-R.S. 23:1121. A judgment to this effect was signed by the hearing officer on April 28, 1993. The defendant suspensively appealed.

ADMISSIBILITY OF MEDICAL REPORT

The defendant contends that the hearing officer erred in admitting into evidence, over its objection, the records of Dr. Burda. Dr. Burda was not deposed, nor did he testify. The defendant asserts that Dr. Burda’s records did not comply with the requirements for admissibility established in Department of Employment and Training, Office of Workers’ Compensation, Hearing Officer Rule 13, which provides in pertinent part:
Expert medical or rehabilitation testimony may be offered by:
1. a verified or declared report;
2. deposition; or
3. oral examination in open hearing proceedings, however, no more than two physicians may present testimony for either party.
The Office, taking into consideration that it is costly and time-consuming to have physicians actually appear at the time of hearing for the purpose of giving live testimony, encourages the production of medical evidence by verified or declared report which shall contain the following, where applicable:
(A) a complete history of the claimant, including all previous relevant or contributory injuries with a detailed description of the present injury;
(B) the complaints of the claimant;
(C) the physician’s findings on examination, including a description of the examination and any diagnostic test and x-rays;
(D) the date and cause of the alleged injury and whether, in the physieians’s opinion it is job-related;
(E) the medical treatment which has already been rendered and the treatment, if any, which the physician recommends for the |7future;
(F) the physical rehabilitative procedures which have already been rendered and the rehabilitative procedures, if any, which the physician recommends for the future;
(G) the period during which the claimant was temporarily and totally disabled. If the claimant remains temporarily and totally disabled, the physician should so indicate. If temporary total disability has already terminated, the date of termination must be indicated;
(H) the physician’s evaluation of the extent of any impairment with a clear indication as to whether it is temporary or permanent in nature;
(I) any other detailed factors upon which the physician’s evaluation of permanent impairment is based, including a statement that the evaluation is in accordance with the “Guides to the Evaluation of Permanent Impairment” as required by LSA-R.S. 23:1221(4)(g); and
(J) the report itself must be signed by the physician and be verified or contain a written declaration, made under the penalty of perjury, that the report is true. The following form of declaration is suggested: “I declare under penalty of perjury that I have examined this report and all statements contained herein, and to the best of my knowledge and belief, are true, correct and complete.”
Following the hearing, the hearing officer allowed several letters, written by Dr. Burda, regarding the plaintiff’s condition, which were directed to the various attorneys who represented the plaintiff throughout the course of the proceedings, to be filed into the record, along with a statement by Dr. Burda, dated November 17, 1992, which provided:
This is to certify that the attached 16 pages of records regarding Ruby Theus, were kept in the usual course of business *635 of Dr. Christopher D. Burda, and are an accurate and correct copy of records in our possession to the best of my knowledge.
In finding that the plaintiff was entitled to supplemental earnings benefits, the hearing officer relied almost exclusively on one letter by Dr. |sBurda, dated June 2, 1992, The defendant argues that the trial court erred in allowing the introduction of Dr. Burda’s letters. This argument has merit.
In the present case, the plaintiff merely submitted to the hearing officer the letters written by Dr. Burda to her various attorneys. No foundation was laid for the introduction of the letters, in accordance with LSA-C.E. Art 803.[3]
Further, as stated above, the Hearing Officer Rules establish a procedure for the introduction of medical reports. That procedure was not followed in this case. The letters submitted by the plaintiff following the hearing do not comply with the requirements for a verified or declared report as specified in Rule 13, set forth above.
No specific definition of a “verified” report or “declared” report is set forth in the rules. However, a verification means “a confirmation of the correctness, truth or authenticity by affidavit, oath, or deposition.” | ¡^Emphasis supplied.] Black’s Law Dictionary 1400 (5th Ed.1979). (We also note that our state’s children’s code, which requires a verified complaint, defines that term as a written statement of facts sworn to before an officer authorized by law to administer oaths.)
Rule 13(J), of the hearing officer rules provides suggested language which is necessary for a written declaration, to properly authenticate the report and allow its admissibility. Although the form provided by Rule 13(J) is a suggested form, nevertheless, it requires that the certification be made “under penalty of perjury” thereby denoting a higher level of responsibility on the part of the affiant than a mere statement that the report is an accurate and correct copy of records in the possession of the affiant “to the best of (his) knowledge.” In the present case, the failure of the doctor to provide the Rule 13(J) declaration or to provide a “verified” report results in the inadmissibility of the reports. Therefore, the hearing officer erred in allowing the letters submitted by the plaintiff, and authored by Dr. Burda, to be admitted into evidence.

ENTITLEMENT TO BENEFITS

The defendant argues that the hearing officer erred in finding that the plaintiff still suffers a compensable disability and that she is entitled to supplemental earnings benefits and additional medical expenses. These arguments also have merit.
To qualify for supplemental earnings benefits under LSA-R.S. 23:1221(3)(a), a plaintiff is required to prove by a preponderance of the evidence that a work related injury resulted in the inability to earn 90% or more of the pre-injury wages. Clark v. Atlantic Painting Company, supra; Britton v. Morton Thiokol, Inc., 604 So.2d 130 (La. App.2d Cir.1992); Lubom v. L.J. Earnest, Inc., 579 So.2d 1174 (La.App.2d Cir.1991).
Dr. Burda’s medical reports were the only evidence plaintiff presented indicating that she continues to be disabled and that the disability was caused by the work related *636 accident in October, 1990. Because these reports were not admissible, there is no evidence in the record that the plaintiffs sprained ankle triggered a systemic joint disease throughout her body which renders her unable to work and unable to earn 90% of her pre-injury wage. Therefore, simply stated, the plaintiff has utterly failed to establish her entitlement to supplemental earnings benefits.
As stated earlier, Dr. Dean and Dr. Lillieh, orthopedic surgeons who treated the plaintiff, found that as a result of the accident, the plaintiff suffered only a sprained ankle. After a few months, the ankle was healed and the plaintiff was sufficiently recovered to return to work at the day care center. Dr. Dean felt that the plaintiff was sufficiently recovered to return to work on November 19, 1990. Later, although the plaintiff complained to Dr. Lillieh regarding pain in other joints of her body, Dr. Lillieh specifically stated that this condition was not caused by the sprained ankle. Accordingly, Dr. Lillieh released her to return to work on March 13, 1991, even though he was aware of her complaints of pain in other portions of her body.
Further, the vocational rehabilitation specialist who evaluated the plaintiff found that she could return to her position with the day care center at Schumpert. She could also obtain employment in numerous other light duty jobs for similar wages and similar working hours.
In We are mindful that a trial court’s finding of fact may not be set aside on appeal in the absence of manifest error or clear wrongness. Where there is conflict in testimony, reasonable inferences of fact should not be disturbed on review. When a trial court’s findings are reasonable in light of the entire record, an appellate court may not reverse a choice between two permissible views of the evidence. Although LSA-R.S. 23:1310.5, in providing for appeal of hearing officer cases to the courts of appeal, fails to set forth the yardstick of review, we have held that the standard should identical to that applied to district court decisions. Brit-ton v. Morton Thiokol, Inc., supra.
Based upon the evidence in this record, the hearing officer was clearly wrong and manifestly erroneous in finding that the plaintiff continued to have a compensable disability as a result of her work related injury. The records of Dr. Burda were not properly admitted into evidence. Without these records, there is not one scintilla of evidence that the plaintiff is disabled or that her work-related ankle injury caused any disability. Therefore, it cannot be said that the decision of the hearing officer, awarding the plaintiff supplemental earnings benefits, was reasonable in light of the record. Nor can it be said that the hearing officer made a choice between two permissible views of the admissible evidence. The hearing officer erred in finding in favor of the plaintiff, based upon the record in this case.

CONCLUSION

For the reasons stated above, we reverse the decision of the workers’ compensation hearing officer, finding that the plaintiff, Ruby E. Theus, is | ^entitled to supplemental earnings benefits and medical expenses beyond those already paid by the defendant, Schumpert Medical Center. Accordingly, judgment is rendered in favor of the defendant, Schumpert Medical Center, rejecting plaintiffs claims, at her costs.
REVERSED.

. In March, 1990, the plaintiff had injured the same ankle in a fall at a local department store. She was required to wear a walking cast for a period of time.

. We note that new Hearing Officer Rules were adopted in 1993, after this hearing. Therefore, the new rales are not applicable to our present review. The rales in effect at the time of the hearing are controlling in this case.

. In a workers’ compensation case, although the court is not bound to follow technical evidentiary rules, hearsay evidence that is clearly inadmissible should not be considered. Clark v. Atlantic Painting Company, 521 So.2d 505 (La.App. 4th Cir. 1988). Under LSA-C.E. Art. 803(6), exceptions to the hearsay rule are established which include medical reports or records. That article provides in pertinent part:
In a civil case, a memorandum, report, record, or data compilation, in any form, of acts, events, conditions, opinions or diagnoses, made at or near the time by, or from information transmitted by, a person with knowledge, if made and kept in the course of a regularly conducted business activity, and if it was the regular practice of that business activity to make and to keep the memorandum, report, record, or data compilation, all as shown by the testimony of the custodian or other qualified witness, unless the source of the information or the method or circumstances of preparation indicate lack of trustworthiness. This exception is inapplicable unless the recorded information was furnished to the business either by a person who has routinely acting for the business in reporting the information or under circumstances under which the statement would not be excluded by the hearsay rule.... [Emphasis supplied.]