697 So.2d 695 (1997)
Deborah S. BEDDES, Plaintiff-Appellant,
v.
QWIK PANTRY, et al., Defendant-Appellee.
No. 29657-WCA.
Court of Appeal of Louisiana, Second Circuit.
June 18, 1997.
*696 John B. Slattery, Jr., Springhill, for Plaintiff-Appellant.
Sam N. Poole, Jr., Alexandria, for Defendant-Appellee.
Before BROWN, WILLIAMS and GASKINS, JJ.
WILLIAMS, Judge.
In this worker's compensation action, claimant, Deborah S. Beddes, appeals a decision in favor of the defendants, Qwik Pantry[1] and FFP Operating Partners, finding that claimant was not entitled to arthroscopic surgery as a reasonable and necessary medical expense, and that defendants were not arbitrary and capricious in denying necessary medical treatment. For the reasons herein expressed, we reverse and remand.

FACTS
Claimant was employed by defendants as a convenience store cashier in Springhill, Louisiana. According to her trial testimony, in the latter part of July 1993, claimant fell and injured her shoulder while attempting to obtain a case of beer from the store's cooler. Although there were no known witnesses to the fall, Melanie Dyson, another employee who was working in the store when claimant allegedly fell, testified that she heard a noise "like something falling" while claimant was in the cooler. Soon thereafter, claimant came back into the area where Dyson was working and told Dyson that she had fallen in the cooler. Claimant testified that she reported the fall to the store's assistant manager on *697 the day following the accident, and that she first sought medical treatment for her shoulder about three weeks after the accident. However, medical reports show that claimant did not see a doctor until September 27, 1993.
Claimant initially sought medical treatment from Dr. Payne. During her first visit, she informed Dr. Payne that she had been injured on the day before. During the trial, claimant testified that the store manager had asked her to tell the doctor that she fell immediately prior to seeking medical treatment, because, according to company policy, the accident report should have been filed on the day following the accident. Dr. Payne treated claimant with medication and injections from September 1993 to early November 1993. However, her condition failed to improve and he referred her to Dr. Edwards, an orthopedic specialist. Dr. Edwards diagnosed claimant's condition as cuff tendonitis with impingement.[2] After treating claimant for approximately five to six weeks without any improvement to her condition, Dr. Edwards directed that claimant undergo an MRI. The result of the MRI was normal. Dr. Edwards then suggested that claimant obtain a second opinion. The defendants would not authorize a second opinion.
After December 1993, claimant did not see Dr. Edwards again until November 1994. At that time, Dr. Edwards opined that she was still suffering from cuff tendonitis, and he recommended arthroscopic surgery. Claimant testified that she advised defendants of Dr. Edwards' recommendation, but they would not authorize the surgery. She returned to Dr. Edwards in March 1995, complaining of the same symptoms. Dr. Edwards reported that some of claimant's symptoms were worse, and they were still consistent with impingement syndrome. The doctor maintained that the only other course of treatment that he could offer claimant was the arthroscopic surgery.
Claimant sought legal counsel and made several demands upon the defendants for the approval of either a second opinion or the surgery. Defendants refused and the claimant filed this action. After a trial, the hearing officer concluded that claimant had shown that she suffered a work-related accident in July 1993.[3] However, the hearing officer found that claimant did not prove that she had been denied reasonable and necessary medical treatment incurred as a result of and arising from injuries sustained in a work-related accident. The hearing officer awarded claimant mileage for doctor visits, denied authorization of further medical treatment, and denied penalties and attorney fees. Claimant appeals the denial of further medical treatment and penalties and attorney fees.

DISCUSSION

Authorization of Surgery
Claimant argues that the hearing officer erred in failing to order the arthroscopic surgery. She contends that the evidence submitted supports a finding that the surgery was reasonable and necessary medical treatment that defendant was obligated to provide.
The hearing officer's findings of fact may not be set aside in the absence of manifest error or unless they are clearly wrong. Kendrix v. Read Lumber & Supply Co., 28,612 (La.App.2d Cir. 9/25/96), 680 So.2d 1287, 1290. An employer is obligated to furnish all necessary medical expenses related to a work injury. LSA-R.S. 23:1203. A claimant may recover medical expenses that are reasonably necessary for the treatment of a medical condition caused by a work-related injury. See Balsamo v. Jones, 28,885 (La.App.2d Cir. 12/11/96), 685 So.2d 1140; Kendrix v. Read Lumber & Supply Co., supra.
*698 In the present case, the hearing officer found that claimant experienced a work-related accident in July 1993. The hearing officer also awarded claimant mileage for doctor's visits which were related to the July 1993 accident. Thus, implicit in the hearing officer's mileage award was the finding that claimant suffered a work-related injury in the July 1993 accident and needed medical treatment. We note that defendant does not contest these findings on appeal.
Neither of claimant's treating physicians testified at trial, but their medical reports were submitted into evidence. Dr. Payne initially treated claimant's injury. Although he notes an incorrect accident date in his report, he relates his diagnosis of elbow and shoulder sprain to claimant's fall in the store's cooler. Dr. Edwards next treated claimant's injury. Although he also reports the date of the fall incorrectly, Dr. Edwards, too, relates claimant's injury to a fall while lifting beer. Dr. Edwards' recommendation of arthroscopic surgery came after a long, unsuccessful course of conservative treatment of claimant's injury with medication, injections, and physical therapy. His treatment is documented in several reports, each indicating that claimant continued to exhibit the symptoms he initially related to her injury in the beer cooler. At no place in his reports does Dr. Edwards document any other incident or medical condition that could have caused or aggravated claimant's symptoms.[4] Dr. Edwards' opinion was that arthroscopic surgery was the only treatment option left to the claimant.
Defendants argue that claimant did not show that the need for surgery was related to her July 1993 accident. Specifically, they urge that because there were large gaps in Dr. Edwards' treatment of claimant, and because at the time of trial, claimant was receiving Social Security Disability benefits for osteoarthritis that caused pain in her joints, the medical evidence preponderates in favor of the hearing officer's finding that surgery was not a reasonable or necessary medical expense. We do not find defendants' arguments persuasive. Although there is an eleven month gap between visits to Dr. Edwards during the course of claimant's treatment, we note that Dr. Edwards' final report in March 1995 states that claimant's complaints on that date were the same as her initial complaints and that her symptoms remained consistent with his initial diagnosis. This report corroborates claimant's testimony that she has continuously had trouble with her shoulder from the time of the accident. Further, claimant testified that she did not have pain in her shoulder from arthritis, and no evidence to the contrary was presented.
Because the objective and uncontradicted medical evidence shows that claimant's symptoms were related to her fall in the beer cooler, that claimant continuously exhibited symptoms consistent with Dr. Edwards' initial diagnosis, and that arthroscopic surgery was the course of treatment Dr. Edwards recommended, we find that the hearing officer erred in determining that the surgery was not a reasonable and necessary medical expense. Therefore, that portion of the judgment denying claimant's claim for arthroscopic surgery must be reversed.

Penalties and Attorney Fees
At the time of claimant's accident, LSA-R.S. 23:1201 E imposed penalties upon any employer who had failed to pay compensation benefits and who had not reasonably controverted the employee's claim to compensation. LSA-R.S. 23:1201.2 imposed reasonable attorney fees upon any employer or insurer who failed to pay benefits within sixty days of receipt of written notice, when such failure was found to be arbitrary, capricious, or without probable cause. Green v. Conagra Broiler Co. 25,599 (La.App.2d Cir. 3/1/95), 651 So.2d 335. In order to reasonably controvert the employee's claim to compensation, the employer must have sufficient factual and medical information to counter the factual and medical information presented by the claimant. Green v. Jackson Rapid Delivery Service, 506 So.2d 1345 (La.App. 2d Cir.1987). Whether a refusal to pay benefits is arbitrary, capricious or without probable cause depends primarily on the facts known to the employer at the time of its action. Green v. Conagra Broiler, Co., supra.
*699 Defendants argue that they had a reasonable basis to deny authorization for the surgery because claimant gave an inaccurate medical history, there were no witnesses to the accident, there were long gaps in claimant's subsequent medical treatment, and claimant continued to work throughout her treatment. We disagree.
At the time defendants refused to authorize a second opinion or surgery for claimant, they were aware of the information contained in Dr. Edwards' reports. The defendants paid all of claimant's medical bills, and according to claimant's testimony, although they would not authorize surgery, defendants told her she could continue to see Dr. Edwards. Further, Dr. Edwards recommended that claimant be evaluated by another physician, but according to claimant, defendants would not authorize a second opinion.[5] While defendants stress the fact that claimant gave an inaccurate medical history, they have never countered claimant's testimony that she was following her supervisor's instructions when she initially gave an accident date. Thus, defendants cannot now rely on the fact that claimant gave an inaccurate medical history to controvert claimant's claim.[6] On the record before us, we cannot find any reasonable basis for defendants to have refused to authorize the surgery. Therefore, defendants' behavior in denying the treatment was arbitrary and capricious and claimant is entitled to attorney fees and penalties as set forth by LSA-R.S 23:1201 E and R.S. 23:1201.2. We therefore remand this matter to the hearing officer for a determination of the amount of penalties and attorney fees to be assessed.

CONCLUSION
That portion of the hearing officer's decision denying claimant's request for surgery and for penalties and attorney fees is reversed, and this case is remanded to the Office of Worker's Compensation for a determination of the amount of penalties and attorney fees owed by defendants. Costs of this appeal are assessed to defendants, Qwik Pantry and FFP Operating Partners.
REVERSED AND REMANDED.
NOTES
[1] Claimant refers to this defendant as "Qwik Pantry." Responsive pleadings filed by the defendants indicate that the correct name of this convenience store is "Kwik Pantry."
[2] A letter from Dr. Edwards to Dr. Payne, thanking Dr. Payne for referring claimant for treatment, was admitted into evidence. In this letter, Dr. Edwards stated that claimant sustained a contusion to the shoulder which aggravated and precipitated some subacromial bursitis and tendonitis. However, in the certified medical records admitted into evidence, Dr. Edwards diagnosed claimant's condition as cuff tendonitis with impingement.
[3] In addition to Melanie Dyson, two of claimant's friends testified regarding symptoms of the injury which claimant manifested after the accident.
[4] Claimant testified that she had never suffered any other injury to her shoulder.
[5] The record shows that claimant's counsel sent letters to defendants requesting a referral for the second opinion. There are no responses to these letters in the record.
[6] Defendants assert in brief that the hearing officer could have terminated claimant's right to compensation under LSA-R.S. 23:1208, which makes it unlawful for any person to make false statements or representations for the purpose of obtaining worker's compensation benefits. However, because claimant's entitlement to benefits would not depend on the date of the accident (unless prescription had been asserted as a defense), LSA-R.S. 23:1208 is inapplicable to this case. See Resweber v. Haroil Construction Company, 94-2708 (La.9/5/95), 660 So.2d 7.